**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| MICHELLE LANE<br>2809 Erie Street, S.E., Apt. B102<br>Washington, D.C.  20020<br><br>     Plaintiff,<br><br>          v.<br><br>CHARTER COMMUNICATIONS, INC.<br>  f/k/a TIME WARNER CABLE, INC.<br>400 Atlantic Street<br>Stamford, Connecticut  06901<br><br>Serve:  Corporation Service Company<br>            Registered Agent<br>            100 Shockoe Slip, 2nd Floor<br>            Richmond, Virginia  23219<br><br>            Defendant. | Civil Action No. _____ |

**COMPLAINT**

COMES NOW THE PLAINTIFF, MICHELLE LANE, by counsel, and moves this Court for entry of judgment in her favor, and against the Defendant, CHARTER COMMUNICATIONS, INC. f/k/a TIME WARNER CABLE, INC., and in support of such motion alleges and avers as follows:

**SUMMARY OF CLAIMS**

At the time of the events complained of herein, Ms. Lane had almost twenty years of telecommunications experience, holding positions encompassing network operations, project analysis and coordination, account executive, technical support, directory services manager, technical support, and analyst positions in business intelligence, customer support, and business

systems. Ms. Lane has worked for various contractors of Charter in the past, and applied for a position as an Implementation Analyst in Charter's Network Operation and Support Department in the Herndon, Virginia office in 2015. Ms. Lane, at the time, was in her fifties, and is African-American.

Despite meeting and exceeding all of the job requirements and qualifications, Ms. Lane was denied an in-person interview and was not hired for the position. The successful candidate, Carly Fader – a then-29 year old Caucasian female, did not have telecom experience, experience with Salesforce.com, or experience addressing orders of telecom products (such as the ethernet, modem, PRI, and business class phone services stated in the job posting), but was nonetheless hired over Ms. Lane, who did have the required experience.

The explanation given by Charter – that the department wanted a "blank slate" employee with no previous experience in telecommunications – directly contradicts Charter's own job requirements and Charter's hiring policy, in which Charter claims that "it is Charter's policy to hire the most qualified candidate, regardless of any protected characteristic, for every position sought." Charter plainly did not follow its own hiring policy in hiring Ms. Fader over Ms. Lane, and Charter's refusal to hire Ms. Lane amounts of discrimination.

## NATURE OF ACTION

1. This action states a claim for discrimination/failure to hire based on Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, and a claim for discrimination/failure to hire in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-34 (the "ADEA").

## PARTIES

2. Plaintiff Michelle Lane ("Ms. Lane") is a resident and citizen of the District of Columbia. At all times relevant hereto, Ms. Lane was employed as a contract employee by Charter Communications, Inc., f/k/a Time Warner Cable, Inc., performing work for Charter in this judicial district.

3. At the time of the events complained of herein, Ms. Lane was 54 years old. At all times relevant to these claims, Ms. Lane was more than 40 years of age.

4. Defendant Charter Communications, Inc., f/k/a Time Warner Cable, Inc. ("Charter") is a is a foreign (Delaware) corporation, registered with the Virginia State Corporation Commission as an active corporation in good standing, and which maintains an agent for the service of process in the Commonwealth of Virginia.

5. Charter provides advanced video, high speed internet, and telephone services to business and residential customers in 41 states, including the Commonwealth of Virginia.

6. Ms. Lane was an "employee" of Charter within the meaning of 42 U.S.C. § 2000e(f) and an "eligible employee" of Charter within the meaning of 29 U.S.C. §2611(2)(A).

7. Charter is an "employer" within the meaning of 42 U.S.C. §2000e(b) and 29 U.S.C. §2611(4)(A).

8. Charter is engaged in an industry affecting commerce and has had more than 500 employees in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

9. Charter is engaged in an industry affecting commerce and has had more than 50 employees for each working day in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 29 U.S.C. § 2611 (4)(A).

## JURISDICTION AND VENUE

10. The amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

11. The causes of action alleged in this action arose in this judicial district, in the County of Fairfax, in the Commonwealth of Virginia.

12. This Court has jurisdiction over Ms. Lane's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, under the ADEA pursuant to 29 U.S.C. § 626(c)(1), and pursuant to 28 U.S.C. § 1331.

13. Jurisdiction and venue are proper in this Court.

## PROCEDURAL STATUS

14. Ms. Lane timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), cross-filed with the Fairfax County Office of Human Rights, on July 23, 2015.

15. The Fairfax Office of Human Rights issued its determination on May 9, 2019, finding sufficient evidence to conclude that Ms. Lane was discriminated against based on her age and race.

16. The EEOC issued a Right to Sue on August 19, 2020.

17. This action is timely filed.

## FACTUAL BACKGROUND

18. Ms. Lane is black/African American.  At the time of the events complained of herein, Ms. Lane was 54 years old.

19. Ms. Lane began working for Charter's predecessor, Time Warner Cable, in 2010 as a contractor. In May 2016, Time Warner Cable was acquired by Charter, and Ms. Lane continued to work in the same capacity as a contractor to Charter.

20. Throughout her employment with Charter, Ms. Lane applied for over 100 permanent jobs with the company, all of which she was well qualified for. Despite this, she was unable to secure permanent employment with the company even though she received consistently strong performance feedback and had strong qualifications.

21. The positions Ms. Lane applied for were primarily in the Network Operations and Support department – a department which (at the time) employed predominately young, white, employees.

22. In June 2015, Lynn Romero ("Ms. Romero"), an internal Recruiter II with Charter, encouraged Ms. Lane to apply for the open Implementation Analyst position in the Network Operation and Support Department in Herndon, Virginia.

23. When an applicant is interested in another job position at another location, the recruiting process is for the recruiter to share notes and the applicant's resume with the recruiter assigned to the location of that particular job.

24. As a result, Ms. Romero contacted Stella McCauley ("Ms. McCauley"), the recruiter for the Herndon position, and forwarded Ms. Lane's resume to her. Ms. Lane then followed up and formally applied for the position through the company's career site.

25. On June 9, 2015, Ms. Lane received an email from Ms. McCauley stating, "Your resume was referred to me by Lynn Romano for the position for the [Implementation Analyst] position above, and based on your impressive resume, the Manager would like to speak with you formally for this role. . ."

26.     After an initial phone conversation with Ms. Lane, Ms. McCauley referred Ms. Lane for a phone interview with Joel Genove ("Mr. Genove"), the Hiring Manager for the Implementation Analyst position, which took place on June 11, 2015.

27.     After the phone interview, Ms. Lane was not selected for an in-person interview, and was not offered the position.

28.     On June 29, 2015, Ms. Lane reached out by email to Jerica Daniels ("Ms. Daniels") (the Recruiting Coordinator who had arranged her phone interview with Mr. Genove) to ask if Mr. Genove had given any indication as to why she had not been selected for an in-person interview, given that she was eminently qualified for the position, and that he had initially requested to speak with her because of her "impressive resume." Ms. Daniels forwarded Ms. Lane's inquiry to Ms. McCauley.

29.     On June 30, 2015, Ms. McCauley responded to Ms. Lane via email, informing her that "[t]he feedback I received from Joel [Genove] is that they truly wanted a 'blank slate' for that role. They've found that it works better for the team."

30.     Ms. Lane was perplexed by this response and responded, "I'm not sure what you meant [sic] 'blank slate' would you mind responding to further explain. He told me that he wanted someone who could require little or no supervision."

31.     Ms. McCauley's response was short: "Someone who has no experience in Telecom that they could train to do things their way."

32.     Charter's stated reasons for not selecting Ms. Lane for the position were demonstrably false. First, Ms. Lane was initially told she did not get the job because the Manager wanted someone with a "blank slate," *with no experience in Telecom,* that could be

6

trained "to do things their way." This was *after* Mr. Genove specifically asked to speak with Ms. Lane about the position based on her "impressive resume."

33. This "blank slate" "reason" was in direct contradiction to the job posting, which said Charter was seeking someone with extensive experience and knowledge in the area.

34. Charter then alleged that Ms. Lane was not the most qualified candidate for the position, which was also demonstrably false, especially given who was ultimately hired.

35. The successful candidate for the position, Carly Feder, was, at the time of her selection and hire over Ms. Lane, a 29 year old, significantly less qualified, Caucasian female.

36. The essential functions for the Implementation Analyst position in the Network Operations and Support Department included the following:

- Assist and support internal orders from order entry through implementation;
- Assist the various internal groups to ensure service delivery within standard intervals;
- Assist the various internal customers to verify order details;
- Monitor internal orders in Salesforce.com;
- Provide internal customer with timely order updates;
- Assist with any internal order process development and documentation efforts;
- Assist with tracking and reporting completion intervals of the various internal order phases; and
- Become an internal order resource and improve the customer experience.

37. The job description for the Implementation Analyst for the Network Operations and Support Department specified that the job requirements included:

- Experience in service delivery and customer management;
- Proven ability to drive orders through to completion by working across internal TWC business units;
- Ability to work through a high volume of orders including different products, such as, but not limited to, Ethernet services, Modem services, PRI, Business Class phone, etc.;
- Project management, skills, analytics, the ability to report KPIs is "a must; and
- Ability to handle multiple tasks in a fast paced environment.

7

38. In addition, experience with order entry management within Salesforce.com and Granite systems was described as "a plus."

39. At the time of her hire and selection over Ms. Lane, Ms. Feder had approximately three years of experience in the areas of working with attorneys and clients in administrative supportive roles, data retrieval, solving client issues and concerns, and the ability to lead and collaborate in team environments. Ms. Feder's resume reported experience working with Autonomy (eDiscovery); Introspect; Lexis/Nexis and MS Office/MS project management.

40. In stark contrast, at the time Ms. Lane was passed over for this position in favor of Ms. Feder, a less qualified, 29 year old Caucasian female, Ms. Lane had approximately 16 years of experience of telecommunications analyst and project management experience. Her "very impressive resume" (as it was characterized by Ms. McCauley) detailed her experience working with Charter as a third-party contractor employee in the capacity of a Senior Business Systems Analyst and a Project Manager.

41. Ms. Lane's resume also showed that she had experience in the Telecommunications field process order flow, that she defined and implemented strategic changes to director functions for Charter while working as a contractor, and had experience working as a Senior Auditor of quality assurance data.

42. Ms. Lane's technical skills included Windows Y Mac Operating Systems; Visual Basic; Web GUI; Microsoft Office; EDI SQL Port PS; Sibel; CSG; SharePoint; Java; XML HTML; Wireless Networks; and DOCSIS.

43. In addition, one of the essential functions of the Implementation Analyst position required that the successful candidate "Monitor internal orders in Salesforce.com." While Ms. Lane had experience providing updates for a daily conference call disbursing information via

Outlook, Clarity, MS Project; PowerPoint, and Salesforce (with experience in Salesforce described as "a plus") Ms. Feder did not possess these skills.

44. There is no question that Ms. Feder was a less qualified applicant for the Implantation Analyst position than Ms. Lane, and that Charter did not follow its own hiring guidelines in which Charter claims that "it is Charter's policy to hire the most qualified candidate, regardless of any protected characteristic, for every position sought." Charter plainly did not follow its own hiring policy in hiring Ms. Fader over Ms. Lane.

45. After being denied the Implementation Analyst position (and the attendant benefits – a salaried position, benefits (most notably, health insurance) and a bonus plan), in February 2016, Ms. Lane was hired for another Contract position (with no health insurance and no other employment benefits) with one of Charter's Trading Partners, Neustar, Inc.

46. During this time, in January 2017, Ms. Lane had a medical emergency and was in the hospital three weeks. She was diagnosed with Multiple Myeloma, a terminal illness. Had she been hired into the position with Charter, she would have had health benefits, leave time, and other employment benefits.

47. Ms. Lane she continued to perform her job remotely while undergoing chemotherapy treatments and a bone marrow transplant. She worked until her assignment ended in May, 2018, and she was not selected for another contract.

## COUNT ONE - DISCRIMINATION/FAILURE TO HIRE IN VIOLATION OF TITLE VII

48. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

49. Charter, through its agents and officers, discriminated against Ms. Lane on account of her race.

9

50. Throughout her employment as a contract employee with Charter, Ms. Lane applied for over 100 permanent jobs with the company, all of which she was well qualified for. Despite this, she was unable to secure permanent employment with the company even though she received consistently strong performance feedback and had strong qualifications.

51. The positions Ms. Lane applied for were primarily in the Network Operations and Support  department – a department which (at the time) employed predominately Caucasian employees.

52. In 2015, Charter failed to follow its own hiring guidelines, and failed to hire Ms. Lane for the Implementation Analyst in Charter's Network Operation and Support Department in the Herndon, Virginia office.

53. Despite meeting and exceeding all of the job requirements and qualifications, Ms. Lane was denied an in-person interview and the position.  The successful candidate who was selected over Ms. Lane was Caucasian, and did not have telecom experience, experience with Salesforce.com, or experience addressing orders of telecom products (such as the ethernet, modem, PRI, and business class phone services stated in the job posting), but was nonetheless hired over Ms. Lane, who did have the required experience.

54. The explanation given by Charter – that the department wanted a "blank slate" employee with no previous experience in telecommunications – directly contradicts Charter's own job requirements and Charter's hiring policy, in which Charter claims that "it is Charter's policy to hire the most qualified candidate, regardless of any protected characteristic, for every position sought."

55. Charter's discriminatory treatment of Ms. Lane violated Title VII of the federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

56.     In discriminating against Ms. Lane in violation of federal law, Charter evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Ms. Lane.

57.     As a direct and proximate result of Defendant's actions, Ms. Lane has suffered and continues to suffer emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

58.     Due to the conscious disregard for Ms. Lane's federally protected rights, and the severity of Charter's conduct, Ms. Lane is also entitled to punitive damages.

## COUNT TWO -
## DISCRIMINATION/FAILURE TO HIRE IN VIOLATION OF THE ADEA

59.     The foregoing allegations are incorporated as if realleged herein.

60.     Charter, through its agents and officers, discriminated against Ms. Lane on account of her age.

61.     Throughout her employment as a contract employee with Charter, Ms. Lane applied for over 100 permanent jobs with the company, all of which she was well qualified for. Despite this, she was unable to secure permanent employment with the company even though she received consistently strong performance feedback and had strong qualifications.

62.     The positions Ms. Lane applied for were primarily in the Network Operations and Support department – a department which (at the time) employed predominately young employees.

63. In 2015, Charter failed to follow its own hiring guidelines when it failed to hire Ms. Lane for the Implementation Analyst in Charter's Network Operation and Support Department in the Herndon, Virginia office.

64. Despite meeting and exceeding all of the job requirements and qualifications, Ms. Lane was denied an in-person interview and the position. The successful candidate, who was 29 years old at the time she was selected for the position over Ms. Lane, did not have telecom experience, experience with Salesforce.com, or experience addressing orders of telecom products (such as the ethernet, modem, PRI, and business class phone services stated in the job posting), but was nonetheless hired over Ms. Lane, who did have the required experience.

65. The explanation given by Charter – that the department wanted a "blank slate" employee with no previous experience in telecommunications – directly contradicts Charter's own job requirements and Charter's hiring policy, in which Charter claims that "it is Charter's policy to hire the most qualified candidate, regardless of any protected characteristic, for every position sought."

66. This discrimination was with respect to Ms. Lane's compensation, terms, conditions, and privileges of employment, and constituted a violation of the Age Discrimination in Employment Act of 1967, as amended.

67. Ms. Lane was discriminated against by Charter in its failure to hire her for the Implementation Analyst position for which she was eminently qualified, because of her age, and Charter's discriminatory treatment of Ms. Lane violated the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-34.

68. Charter engaged in these discriminatory practices willfully, within the meaning of Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b).

69. In discriminating against Ms. Lane in violation of federal law, Charter's conduct was actuated by malice, spite and ill-will; was willful and wanton, and evinced conscious disregard for the rights of Ms. Lane.

70. As a direct and proximate result of this discrimination, Ms. Lane has suffered and continues to suffer injury including past and future loss of income and benefits of employment, other past pecuniary losses, future pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and other injury.

71. Due to the severity and knowledge of Defendant's conduct, Ms. Lane is also entitled to liquidated damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MICHELLE LANE requests that this Court enter judgment in her favor, and against Defendant CHARTER COMMUNICATIONS, INC. f/k/a TIME WARNER CABLE, INC., on the above stated Counts; and further:

(a) Award Ms. Lane compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on Count One; and in addition

(b) Award Ms. Lane punitive damages on Count One in the amount of three hundred and fifty thousand dollars ($350,000) (the statutory cap in Virginia); and in addition

(c) Award Ms. Lane appropriate front pay and back pay, benefits, pecuniary losses, pre-judgment interest, and post-judgment interest on Count Two; and in addition

(d) Award Ms. Lane liquidated damages on Count Two; and in addition

(e) Award Ms. Lane' attorneys' fees and the costs of this action; and in addition

(f) Award injunctive relief consisting of an order prohibiting Defendant from engaging in further employment practices that create or tolerate a discriminatory work environment; and in addition

(g) Award Ms. Lane such other and further relief as may be appropriate under the circumstances.

### JURY DEMAND

PLAINTIFF MICHELLE LANE DEMANDS A TRIAL BY JURY.

November 12, 2020                             Respectfully submitted,

/S/ CARLA D. BROWN

Carla D. Brown
Virginia Bar No. 44803
cbrown@cbcblaw.com
CHARLSON BREDEHOFT
  COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile

*Counsel for Plaintiff, Michelle Lane*